UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| KELLI MORNINGSTAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 4:24-cv-121 |
| | ) | |
| CITY OF MIDWAY, GEORGIA | ) | JURY DEMAND (12) |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

COMES NOW the Plaintiff, **KELLI MORNINGSTAR** (hereinafter "Plaintiff") by and through counsel, and files her Complaint as follows against the Defendant, **CITY OF MIDWAY, GEORGIA** (hereinafter "Defendant"), seeking relief for discrimination on the basis of race pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and 42 U.S.C. §1983 to correct unlawful employment practices on the basis of race and deprivation of rights and to provide appropriate relief to Plaintiff who was adversely affected by such practices.

## PARTIES

1. Plaintiff, is a resident of the United States who resides in Midway, Georgia. She is and was at all times relevant to this Complaint a citizen of the State of Georgia and a resident of Liberty County. Plaintiff is white/Caucasian by race and/or color.

2. Defendant, City of Midway, Georgia, is, upon information and belief, a government entity and/or political subdivision organized under the laws of the State of Georgia, with its principal place of business at 41 Charlie Butler Midway, Georgia 31320 and may be served process

1

by serving Complaint and Summons upon Mayor Levern Clancy, Jr. or such other agent authorized to accept service pursuant to OCGA 9-11-4(e)(5).

3. Defendant is a local governmental authority subject to suit under 42 U.S.C. §1983.

4. Plaintiff performed her duties at Defendant's location at 41 Charlie Butler Midway, Georgia 31320 and within the jurisdictional boundaries and/or city limits of Midway, Georgia. The incidents referenced herein occurred in Midway, Georgia.

## JURISDICTION AND VENUE

5. Jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et. Seq.) and/or Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and 42 U.S.C. §1983. This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 451, 1331, 1332, 1343, and 1367.

6. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the present claim occurred within this judicial district and Savannah Division. Liberty County is in the Savannah Division.

7. On or about August 15, 2023, Plaintiff filed a charge of discrimination (No. 415-2023-01686) attached hereto as exhibit 1 against Defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination.

8. On or about March 19, 2024, a notice of suit rights attached hereto as an exhibit 2 was issued from the EEOC, advising her that she had 90 days to file against Defendant under Title VII.

9. Plaintiff has filed a Complaint within the aforementioned 90 day right to sue period and all conditions precedent to the institution of this lawsuit have been fulfilled.

10. At all relevant times, Plaintiff has been an employee and Defendant has continuously been an employer as defined under Title VII.

11. The unlawful discrimination and/or retaliation alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Georgia, Savannah Division.

12. Plaintiff asserts she was discriminated against on the basis of her race and/or color. As such, Plaintiff falls within the protected class as a "person" and/or employee as defined in 42 U.S.C. § 2000e(a) who applied for and accepted employment with Defendant.

13. Defendant(s) are "employer(s)" as that term is defined by 42 U.S.C. § 2000e(b).

## STATEMENT OF FACTS

14. The discriminatory conduct alleged herein occurred in connection with Plaintiff's employment with Defendant as a law enforcement officer working at Defendant's office located at 41 Charlie Butler Midway, Georgia 31320. Plaintiff was the chief of police.

15. Plaintiff was performing her job in a manner that was consistent with Defendant's legitimate expectations.

16. Since at least May 1, 2023, Defendant has engaged in unlawful employment practices at its Midway, Georgia location in violation of § 703(a) Title VII, 42 U.S.C. § 2000e-2(a) and/or Section 704(a) Title VII, 42 U.S.C § 2000e-3(a) and Section 1981.

17. Defendant(s)' discriminatory practices include, but are not limited to: (1) creating or permitting a hostile work environment heavily charged with discrimination; (2) maintaining wages, job assignments and other conditions of employment that unlawfully operate to deny equal opportunity to Plaintiff because of her race and/or color; and (3) creating a hostile, racially charged work environment such that no reasonable person would be expected to endure.

18. Plaintiff was hired on or about June 1, 2007.

19. Plaintiff was under the direct supervision of City Council Member Stanley Brown (Hereinafter Brown) and/or Mayor Levern Clancy, Jr. (hereinafter Mayor) who are each African American.

20. Defendant had the authority to materially alter the terms and conditions of Plaintiff's employment.

21. On or about January 1, 2023, Mr. Brown was placed as liaison between the police department and Mayor.

22. In January or February 2023, Mr. Brown stated in a meeting with the entire police department that the police department could no longer back up Liberty County if they required assistance.

23. On or about March 15, 2023, Mr. Brown sent a text communication to Plaintiff demanding that another white police officer remove a "punisher" caricature from his social media pages because he deemed to them be racist and/or hate symbols. Plaintiff and this officer were the only white law enforcement officers in the police department.

24. Plaintiff acknowledged receipt of the communication but considered it absurd as it is a common symbol expressed by law enforcement and military nationally. Plaintiff asked the officer to remove it from his social media complying with Mr. Brown's request. The request was motivated by Mr. Brown's perception of the symbol being related to white law enforcement officers and/or white race though it is not demeaning or racist in any manner.

25. In late March or early April 2023, Plaintiff was on a typical police stop for a traffic violation. During the stop, another vehicle drove by nearly hitting Plaintiff at an estimated speed of 55 mph. This vehicle failed to comply with Georgia statute OCGA 40-6-16 whereby motorists

are required to move into other late or reduce to a slow passing speed. Plaintiff subsequently pulled this driver over and issued a ticket for the violation. The driver was African American. Approximately one week later, Mr. Brown and Mayor demanded that Plaintiff appear at Court to change the ticket to a warning. This was motivated by race.

26. In May 2023, then Council Member Malcolm Williams (not presently on council) instructed Plaintiff to run radar on the east county side of Highway 84 near Midway Middle School and Liberty Elementary School. Plaintiff stated that the City of Midway had no jurisdiction to run radar and issue traffic violations on the east county side of Highway 84 which was the jurisdiction of Liberty County Sherriff's Department. It would have been a violation of law for Plaintiff to do this. Mr. Williams said the "citizens don't know that." The opposite lane was in the jurisdiction of the City of Midway.

27. On or about June 16, 2023, there was an incident involving a police officer tasing an African American with an extensive criminal history with numerous criminal trespass charges and/or convictions. Upon information and belief, this male individual was related to a council member. This individual was arrested during the incident because he was trespassing at a motel where he had been previously criminally trespassed for illegal drug activity. Plaintiff was not aware of the incident until a couple days later when the officer informed her. Plaintiff was not aware that the officer had not informed the Mayor. The Mayor admonished Plaintiff for not informing him and she replied she did not know he had not been informed.

28. Plaintiff provided a video to an investigator with the Liberty County Sheriff's Department who opined that the tasing was appropriate. Depending on the severity of any incident, it was customary for it to be reviewed by Liberty County Sheriff's Department. Plaintiff had asked the Mayor and Council to send the full incident report including evidentiary material to Liberty

County Sherriff's Department for a formal review. This was during a city meeting where the officer was to be terminated which occurred. The Mayor stated there was no need to do this. The officer was also white as Plaintiff is. The Mayor's instructions were motivated by race.

29. During this same city council meeting, Plaintiff was terminated and completely unexpected.

30. Prior to this termination of Plaintiff's employment, Plaintiff had been informed by a citizen that the Mayor wanted to "black wash" Liberty County law enforcement meaning city and Sheriff's department. This person learned this from statements communicated by an African American citizen believed to be related to the Mayor.

31. At the time of termination, all other police officers were African American.

32. The police officer referenced above and Plaintiff were replaced by African Americans who were less qualified.

33. The Mayor had attended the police academy and did not pass and was not able to join law enforcement approximately two years prior to this time.

34. Defendant terminated Plaintiff as a white employee upon a pretext of certain allegations of inappropriate behavior.

35. There had been two African American police officers in the department that had committed wage theft by submitting false time sheets. One had been clocked in by another African American officer when she had not even arrived at work until several hours later. There is suspicion that this occurred more than once. This was reported to the City Council and the Mayor after Plaintiff's termination, and the officer was not disciplined. Another African American officer reported time when he was actually at his residence. Plaintiff had reported this to the Mayor but he failed to take any remedial action each time. These officers were not subject to any discipline.

36. This constituted disparate treatment as black police officers or employees were treatment more favorably though similarly situated. Plaintiff was treated differently because of her race. Plaintiff satisfied the expectations of Defendant as the employer with regard to her performance. Plaintiff was subjected to different and/or unfair standards compared to that of African American police officers or city employees.

37. Plaintiff was subjected to hostile work environment by Mayor and Council Member Stanley Brown heavily charged with bullying, harassment, and intimidation on the basis of and/or motivated by her race being white/Caucasian. The following includes, but is not limited to, such acts.

38. In March or April 2023, Plaintiff was subjected to inappropriate conduct by Mayor. During a meeting the Mayor admonished her in a city meeting in a raised voice demanding that she pick up outdoor signs all over the city and yelling "I told you to do it."

39. In January or February 2023, Plaintiff was walking out of the jail cell and the Mayor admonished Plaintiff upon his perception that she had yelled at him. The Mayor yelled at Plaintiff in an offensive and unprofessional manner.

40. In March or April 2023, the Mayor stated to Plaintiff that he could not attend an event celebrating Plaintiff's achievements as chief of police stating he had more important things to do. This was insulting and belittling to Plaintiff.

41. In April or May 2023, Mayor disclosed to Plaintiff that approximately $250,000.00 was transferred into an incorrect financial account and instructed her to draft a report. Plaintiff responded that she would have to inform a detective from Liberty County Sheriff's Department who performed all investigations. Mayor responded that she could not disclose it to anyone and to do as she was told and to do the report.

42. Mayor pervasively conducted himself in a condescending manner wherein he repeatedly stated to Plaintiff that he was in charge of the police department and makes all the decisions. The Mayor stated that she had no influence or power.

43. The Mayor instructed Plaintiff clean out a shed behind the police department. This shed was utilized by various city departments and Plaintiff responded that this was to be cleaned out by city employees who use it. The Mayor responded to her stating "I told you to it." This was demeaning for a chief of police.

44. This conduct was not welcomed by Plaintiff who found it demeaning and it was so severe and pervasive such that the work environment was hostile and/or abusive. The Mayor's conduct was motivated by Plaintiff's race being white.

45. There was a tangible employment action being Defendant terminating Plaintiff's employment.

46. At all times material to this Complaint and while engaging in all of the conduct giving rise to Plaintiff's claims, Defendant acted under the color of state and local law.

47. Mayor Levern Clancy, Jr. and the four individual members of the City Council comprise the Defendant City of Midway local governing body and are the decision makers that develop and maintain policies, customs, and practices. In furtherance thereof, this body terminates city employees during city meetings. Any appeal of termination would be before this same governing body. The Mayor and this Council terminated Plaintiff's employment consistent with such policies, customs, and practices.

48. In engaging in the unlawful conduct giving rise to this Complaint, the Defendant acted pursuant to an official or unofficial City government custom, practice, and/or or policy of racial discrimination in terminating white/Caucasian officers/employees and retaining or

reassigning African Americans. Defendant terminated Plaintiff because of her race, in furtherance of this official or unofficial custom or policy. Defendant's unlawful custom, practice, or policy of racial discrimination was the moving force behind the termination of Plaintiff's employment.

49. At all times material to this Complaint, it was clearly established law that governmental entities and their decision makers violate the Equal Protection Clause; 42 U.S.C. § 1981; and Title VII of the Civil Rights Act of 1964, as amended, by terminating white employees to "black wash" the police department because of race.

50. Defendant undertook all of the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to Plaintiff's federally protected rights.

51. Additionally and in the alternative, Defendant undertook all of the above-pled conduct with reckless disregard for Plaintiff's federally protected rights.

## COUNT I RACE DISCRIMINATION UNDER TITLE VII

52. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

53. It is a violation of Title VII for employers to discriminate against employees based on race by direct discrimination and/or disparate treatment as averred herein.

54. Plaintiff was subjected to discrimination in Defendant's workplace because of her race being white/Caucasian, in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq*.

55. Defendant(s)' discriminatory practices include, but are not limited to: (1) creating or permitting a hostile work environment heavily charged with discrimination; (2) maintaining wages, job assignments and other conditions of employment that unlawfully operate to deny equal opportunity to Plaintiff because of her race; and (3) creating a hostile, racially charged work environment such that no reasonable person would be expected to endure.

56. Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, as amended, makes it an unlawful employment practice for an employer to discharge or discipline an employee because of her race, color, religion, sex, or national origin.

57. Defendant took an adverse employment action against Plaintiff when it terminated Plaintiff's employment. Defendant did not take adverse employment actions against African American officers involved in incidents averred herein in violation of Title VII of the Civil Rights Act of 1964.

58. Defendant is strictly liable for the acts averred herein it had authority to materially alter the terms and conditions of employment for employees under its supervision.

59. The frequency of the discriminatory conduct, its severity, physically threatening and humiliating to Plaintiff unreasonably interfered with Plaintiff's work performance and adversely affected her psychological well-being. Such facts constitute a "hostile and/or "abusive" work environment charged with racial animus permeating the workplace.

60. Plaintiff is a member of a protected class being white/Caucasian.

61. Plaintiff suffered an adverse employment action by termination of her employment.

62. Plaintiff met employer's legitimate expectations at the time of the adverse employment action.

63. Plaintiff was treated differently from similarly situated employees outside her protected class.

64. But for her race, the actions alleged herein would not have occurred and damages would not have been incurred or sustained. As a direct and proximate result of Defendant's violations averred herein, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT II RACE DISCRIMINATION UNDER 42 U.S.C. § 1981 BROUGHT THROUGH 42 U.S.C. §1983

65. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

66. Plaintiff is white/Caucasian and was singled out for intentional, willful, and wanton discrimination on the basis of her race.

67. It is a violation of 42 U.S.C. § 1981 for employers to discriminate against employees based on race by direct discrimination and/or disparate treatment as averred herein.

68. Plaintiff had an at-will employment contract with Defendant for which she made and seeks to continue and enforce.

69. 42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts. This includes the making of, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. In committing the intentional, willful, and wanton acts described herein, Plaintiff was denied the same, and other benefits, privileges, terms and conditions due to her race as white/Caucasian; She was also subjected to extreme harassment due to her race.

70. Plaintiff was treated differently from similarly situated employees outside her protected class.

71. But for her race, the actions alleged herein would not have occurred and damages would not have been incurred or sustained. As a direct and proximate result of Defendant's violations averred herein, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

72. As such, Defendant violated 42 U.S.C. § 1981. and this is brought through 42 U.S.C. §1983.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. Injunctive relief of reinstatement to her position of employment as chief of police and a declaration that the Defendant violated Plaintiff's rights with regard to race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. and/or Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981")

2. Actual damages incurred as a result of lost pay or benefits;

3. Compensatory damages with prejudgment interest to Plaintiff for all salary, back pay, front pay, and benefits lost due to Defendant(s)' unlawful actions in an amount not less than $300,000.00 or to be determined;

4. Damages to Plaintiff for emotional distress, stress, anxiety, inconvenience, loss of enjoyment of life, embarrassment, and humiliation in an amount to be determined;

5. Punitive damages to Plaintiff in an amount to be determined;

6. Liquidated damages;

7. Prejudgment interest and, if applicable, post-judgment interest; and

8. Award to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, costs, and expenses; and

9. Such other and further legal or equitable relief to which she may be entitled under the Title VII and 42 U.S.C. § 1981 and any other statutory or common law; and

10. Such other and further relief as the Court deems just and proper.

11. That a jury (12) of Plaintiff's peers be empaneled to try the issues raised in this cause;

Respectfully submitted,

/s/Roland Mumford

Roland Mumford GA BAR# 817109
Law Offices of Roland Mumford
Postal address and Tennessee office:
242 West Main Street, No. 223
Hendersonville, TN 37075

Georgia office:
10982 Ford Avenue
Richmond Hill, GA 31324

Phone: 615.348.0070
Fax: 615.246.4110
Email: roland@mumfordlaw.net
Attorney for Plaintiff